May it please the Court, I'm Karen Landau. I represent the appellant Frank Acosta. This Court should reverse appellant's conviction based on prosecutorial misconduct. In addition, there is a separate requirement that this case be remanded for a new hearing on the motion for a new trial and for resentencing because he was denied his counsel choice at sentencing. The prosecutorial misconduct occurred in this case at several instances during the trial. I'd first like to address what happened in closing rebuttal. During closing rebuttal, the prosecutor got up and during his argument, turned, pointed to the defendant and said, basically, look at him. He doesn't delegate. He doesn't delegate. He's communicating with his counselor, with his attorney. This is not the person, this is not a person who would not have known what was going on. In so doing, the prosecutor struck at the heart of the defense, which was, of course, that Mr. Acosta did not know what was going on. He also impugned the defendant's Sixth Amendment right to counsel and, as well, made a comment on the Fifth Amendment right to counsel. Now, this is subject to clear. Fifth Amendment. I'm sorry. I misspoke. The Fifth Amendment right to silence. You're right, Your Honor. Excuse me. That's a fairly key distinction for you. I agree. I agree with you, Your Honor. I agree. I guess, assuming that is error, why isn't it harmless error in the sense that he's sitting there the whole time during the trial? And, you know, anyone that's ever sat in a trial, the jurors look at people all the time coming in and out of the trial. And they're, you know, they're, you know, so it's not that they wouldn't have seen all of that anyway or that the assumptions that, you know, I mean, they could have come to that conclusion without saying anything, and we would have never known about it. Well, you're right. And there is. And why isn't the evidence overwhelming against your client, I guess? Well, there's several parts to that question I'd like to answer. So let me take the first part first. First of all, the jury did see Mr. Acosta, certainly, and they would have observed his demeanor. But the prosecutor argued that his demeanor was a basis for conviction. And that was — I'll give you that. That was — and not only that. In particular, the prosecutor — when the prosecutor impugned his exercise of the Sixth Amendment right, many jurors are predisposed to, of course, believe that lawyers' jobs are to obfuscate this truth and to do all sorts of, you know, unadmirable things. And so in so doing, essentially, we don't know why — of course, we don't know why the jury convicted him. We're not there in the jury room. And it's certainly possible that this particular act of misconduct was the thing that shifted, that turned the tide toward conviction, so to speak. In addition, the comment — some circuits would have considered that comment as a comment on the right to silence. And that is a clearly impermissible basis for conviction. Now, if he had testified, the prosecutor could have made that type of a commentary. Well, maybe not precisely that type of a commentary, but something else. But that was not the situation. Now, in terms of the weight of the evidence, I will — the government's case against Mr. Acosta was strong. But it was not overwhelming. There are several things that indicate that. First, the first trial of this case ended in a mistrial. So, obviously, one jury — one juror at least, maybe more, I'm not sure — was not convinced. Second, this was a case that went to credibility. And this Court has held, in cases involving prosecutorial misconduct, that where credibility is central, prosecutorial misconduct takes on a greater weight, so to speak. There's also documents, though, here. You've got all the documents. You've got money and accounts and all of that. Yes, that's true. But, in fact, Mr. Acosta's wife got up and testified that she forged his signature, that she was the one who was responsible, and that she handled all the loan processes. And she was impeached. But the government relied heavily on conspirator, on cooperating defendant, cooperating witness testimony. And those witnesses were — you know, they all had a motivated — usual motives to cooperate. So this was not — again, it was just not an open-and-shut case. Why don't you go on to the Sixth Amendment right to counsel, and could you address in the course of that whether it's harmless error or structural error? Well, Your Honor, I submitted a 28-J letter. After — okay, the United States Supreme Court recently held that the denial of counsel of choice is structural error. Now, the Gonzales-Lopez case held that — of course, the Gonzales-Lopez case, the facts arose in the context of the denial of counsel of choice at trial. But — Never mentions sentencing, right? That's correct, Your Honor. But if one reads the Walters decision, it's quite clear that the Gonzales-Lopez decision has completely undermined the foundation for the Walters harmless error analysis. Mr. — first of all, I would just draw the Court's attention. There is a particular line in Gonzales-Lopez, and I have a — I don't have an official U.S. report site. But at one point, the justice writes, So also with the Sixth Amendment right to counsel of choice, it commands not that a trial be fair, but that a particular guarantee of fairness be provided to it, that the accused be defended by the counsel he believes to be best. That is the guarantee that was violated here. Now, this is not a situation, and I want to make clear, this is not a situation where we had an attorney who came in, created problems, was contumacious, didn't follow the local rules, had a history of being obstreperous. He came in. He filed a motion for Lee to appear pro hoc vicee. The judge denied it in using rather strong language. And there was completely no factual basis to support the judge's decision to deny the motion for Lee to proceed pro hoc vicee. The judge didn't consider the Sixth Amendment. And, in fact, it's clear under the first part of Walters and under numerous circuit cases from other circuits that this was an improper denial of counsel of choice. Well, just I think perhaps where Judge Callahan may want to go to, in Justice Scalia's opinion, he goes, he's pretty clear that the violation is the denial of the counsel of choice. But then at the end, he has, of his opinion, he then gets into this discussion. First of all, he says, nor may a defendant insist on representation by a person who is not a member of the bar. Now, I assume by that statement, he's talking about not a member of the federal bar, per se, or the state bar, whatever, where it's pro hoc vicee, but just not a lawyer at all, although that may be debatable. But then what he then goes on to say is none of these limitations on the right to choose one's counsel is relevant here. This is not a case about a court's power to enforce rules or adhere to practices that determine which attorneys may appear before it or to make scheduling or other decisions that effectively exclude a defendant's first choice of counsel. What's he getting at there? Well, I think, Your Honor, he – I think he is referring precisely to the – I think what – I think he's referring to a couple of things. And when you look at the facts of Gonzalez-Lopez, that makes it clear – it sort of clarifies that. But in my opinion, Justice Scalia is referring to the court's inherent power to discipline attorneys, to, for example, not allow attorneys to become full members of the bar if they don't meet certain requirements, which is not challenged here. To – you know, in order – in other words, to take certain actions to maintain an orderly court and to, you know, to have certain supervisory rules. But the Gonzalez-Lopez case itself involved a Pro Hoc Vice motion. The – what was at issue was, in fact, the denial of counsel of choices motion to appear Pro Hoc Vice. He was not a member – All right. If – let's say if we buy your argument on a Pro Hoc Vice on some level, then the remedy for that is to go back at sentencing and was that – The motion for new trial. The motion for new trial. For you to prevail on that, do we have to – because, you know, I don't think that – I don't think Gonzalez-Lopez is exactly on point because it's a trial and it doesn't talk about sentencing. We still do have Walters. Do we have to find that it's structural error at sentencing? Do we have to, you know, essentially do that? Or can you prevail otherwise? Well, I think – Can you prevail under harmless error? Well, Your Honor, I argued in my brief, of course, that I could prevail under harmless error because my briefing was complete before Gonzalez-Lopez. I do think that – I think Gonzalez-Lopez completely undermines that portion of Walters. I've already said that. But, yes. But in terms of – in terms of harmless error, yes. I agree that the error was – I have argued that the error wasn't harmless. The thing is, is another thing that Gonzalez-Lopez makes clear is that we don't apply the test for ineffective assistance of counsel. So it's not necessary – in other words, to find harmless error, you don't have to find that Mr. Acosta received ineffective assistance at sentencing. But the situation here is Mr. Ellis is a nationally recognized expert at sentencing. He's very, very good. I don't think I have to argue that I was ineffective at sentencing to say, he might well have done a better job. And, you know, if you're asking me – You don't have to fall on your sword. Okay. I wasn't going to, but I appreciate that, Your Honor. We wouldn't buy it anyway. I did – I mean, this is the thing. I would argue, after Booker especially – and this was a post-Booker sentencing. I would argue that Mr. Ellis was the counsel in Walters. He was. That's correct, Your Honor. And, in fact, just as a point of reference, the motion for Lee to appear pro hoc v. Chase cited the Walters case. And yet Judge Tabrisian – well, I mean, I won't reiterate Judge Tabrisian's order. I do want to – does the Court have any question? I just want to make sure if –  Okay. Well, let me go back to that point then. You're right. I got off track. I apologize. After Booker, sentencing counsel has become much more important because the guidelines are no longer mandatory. And so the more persuasive a sentencing advocate is, the greater likelihood that the defendant is going to get a better result. Now, here, ultimately, Judge Tabrisian sentenced Mr. Acosta within the guidelines. He did not – I believe it was at some point right in the middle, not near – toward the lower end, I think, or maybe toward the upper end. I can't remember. But it was a guideline-range sentence. And there was a considerable amount of document – there were things presented to urge the judge to impose a lower sentence. But the judge was not persuaded. And in that type of case, that's exactly where somebody like Mr. Ellis might well have made a difference. Can I say he would have made a difference for sure? Well, nobody can say that. That's part of the reason of the difficulty. I mean, that is the reason that I would, again, argue that it is structural error no matter – as long as it occurs at a critical stage of the proceeding. And there's no doubt that sentencing is a critical stage of the criminal proceeding. We won't save the rest of your time. Yeah, I'd be happy to save the rest of my time for a bottle. Thank you. Oh, sorry. Good morning, Your Honors. Elisa Fernandez on behalf of the United States. May it please the Court. The record and the evidence in this case shows that the defendant received a fair trial and that there was overwhelming evidence to support his convictions. The jury in this case heard a tape recording wherein the defendant essentially admitted the conduct at issue in the trial. He admitted to having paid a young person $1,000 to sign fraudulent loan documents. Well, I think obviously the most serious error, in my view, is saying you saw the defendant there, you know, talking and, you know, he's not a person that takes the back seat and all of that. So that's what you have to, in my view, overcome on that error. Yeah. I think it's important for the Court. The government concedes that the statement was improper in closing the book. And it's important for this Court, based on the case law that's applicable, to do essentially two things. One, it was, most of you, that comment, that improper comment or error in the context in which it occurred. And the facts of this case show several things. One, that there was no objection from the defendant. And having there been no objection, that leads to the reasonable inference that it went by the defendant and defense counsel. The jury would not have noticed it. In addition to that, as the government points out in its briefs, unlike the case in Carroll and Shuler, in this case, apart from being no objection, there was no undue attention brought to that error. Because there was no chastising the defense counsel, because there was no objection that was overruled, because there was no curate instruction given, it just passed along to the other evidence. The other context issue is that this comment was made in the thrust of that closing rebuttal, was that the papers themselves, the documents of which the jury saw, over a hundred of them, coupled with the testimony of the defense's own witness, Madrigal, showed that the defendant knew and actually was hands-on in terms of how the proceeds were split up and the expenses were accounted for. If you focus on the facts of that closing rebuttal, you will see that the force of it was essentially taking the jury through a mathematical calculation of how the documents showed that the defendant would have known that, one, the documents were false and that a down payment was paid. Ms. Madrigal, on her cross, initially admitted that that document was shown to the defendant and that he had seen it. Later, she attempted to recant and show that it didn't happen because it showed the down payment on it. But when you did the math in terms of the money that actually went out of the account that was solely controlled by the defendant and that evidence was shown at trial, by doing the math, in order for him to have calculated the defendant, the proceeds and the profits 50-50, he would have to have accounted for the very money that Madrigal says he would not have known about. How would he have had accounted for it? He would have had to account for the down payment that was paid by one of the partners. He would have had to account for the false documents that were purchased. He would have had to account for the money that was paid to the straw borrowers. Only by taking into account those documents could the proceeds check, which was in the defendant's own handwriting, could have been written. If not, he wouldn't have come up with the math. So those documents, and not this passing erroneous comment, but it's those documents coupled with the impeachment of Ms. Madrigal with those very same documents show that not only did he know about it, but that he was hands-on. That the defendant was himself looking at the documents, figuring out what partners made what expenses, which included down payments which were illegal by the partners, not the borrowers, which included false documents and which included straw buyers. In addition to that, if you look at the – it's important for the court, the second issue, apart from looking at the context of the comment, is that the court must consider the overwhelming evidence in this case. And the overwhelming evidence in this case falls into general categories. One is that in this trial, there was a tape recording of the defendant, as I stated earlier, admitting to essentially the conduct at issue. In that tape, the defendant is heard scolding his – essentially heard scolding Rocha, which is his cousin, for telling the FBI that defendant had paid Rocha $1,000 to have signed loan documents. And that's at RT-216-05-168-171, which is the excerpts of record at 114 through 117. And again, the excerpts of record at 168 and 164. On that same tape, the jury heard the defendant say, quote, I paid you to do that because hell, now they're going to bust me for that. And that's at Reporters' Transcript 216-05-168, excerpts of record at 114. The jury in this case, the jury at issue, heard the defendant say, it will probably take a year or two years so that the only way they can nail me is if you F and say, hey, my cousin did this and that and that. Reporters' Transcript at 217-05-174-ER-180. And that's exactly what happened. In this trial, Willie E. Rocha testified, and that individual, who's the cousin of the defendant, said that when he was 21 years old, the defendant asked him to sign to assist the defendant in purchasing apartments. And in exchange for that, he would receive $1,000. The jury heard not only the tape of the defendant's own testimony, but really Rocha's testimony. In addition to that, yes, over a dozen witnesses testified on behalf of the government. Three of them were co-conspirators, but there were three different co-conspirators, Frank Garcia, Gerard Curran, and Joey Gonzalez. Each of them had an independent, separate arrangement with the defendant. But the basic arrangement was the same, and the testimony shows that it was essentially the same. It showed that. Okay. I think we have in mind, because I'd like you to, could you address the structural error issue as opposed to harmless error issue on the counsel? Yes, Your Honor. Because we do have, I mean, obviously this, if counsel for Mr. Acosta is correct, then this court's precedent in Walters has been undermined. And so we need the government's take on this. Yes, Your Honor. Because Justice Scalia's opinion is pretty clear about why it's structural error, at least in the trial context. So does the government think you can make a fair distinction in the sentencing context, or are we really looking at a pretty clear Supreme Court ruling that's going to have to be applied now to the right to counsel of choice in the sentencing area? I think the court has pointed out the very distinction that the government would point out, is that the Gonzalez case and the Supreme Court did affirm the Eighth Circuit case. But at issue in there was the denial of counsel at the trial phase. And that denial was a fundamental right that would not lend itself to harmless error. The facts at issue in Walters, which are the precise facts at issue in this case, is that the counsel, the exclusion of counsel occurred post-trial, post-verdicts, post-filing of the motion for new trial. It occurred after the filing of that motion for new trial. And so the exclusion only occurred. And so you're saying it would only have to be remanded for sentence? Yes, Your Honor. Well, that's the question. The counsel here was only denied at sentencing. So we're only talking about sentencing. It's my understanding that defense counsel has asked that if there is error, regardless of the standard that's applied, it should be remanded for the motion for new trial and sentencing. The government's position is that given not only the timing of when the application went through, which was post-trial, post-verdict, post-filing of the motions for new trial, but in addition to that, the government would point out the application for continuance, wherein in footnote 1, they represent specifically in footnote 1, that's CR 272 ER 99, that the defendant, quote, defendant also has associated additional counsel for sentencing, the law office of Allen Ellis. And that's at GER 871. And so the government's position is that not only the timing of when the PROACT-BT application was filed, but the representation to the court was that he would come in for sentencing, that if there is a remand, it would be limited only to a resentence. So that begs the question that I asked, which is, does the government urge that Dallas should be, does also apply to sentencing? Yes, Your Honor. No. Basically, that goes, Dallas does not apply to sentencing, because the analysis was that there was error in depriving the person of his right to counsel. And not only that, if you look specifically at the underlying facts of the Eighth Circuit, Gonzalez's opinion, not only was he denied the right to counsel, but he was denied the right to confer with that counsel throughout the trial process. But sentencing is, if you, but let's just take it, you know, okay, so you have the right to counsel of your choice or whatever, but then, but if the judge had said, I'm not going to give you a lawyer at sentencing, all right, what would that, isn't that a critical stage of the proceeding? Well, I think that. I mean, would you say that would be fine? I think that the standard is different, and that's the question that the court has asked, is if that denial of counsel occurred, you know, and we haven't discussed the first threshold question, whether or not it was a mechanistic application of the rule, which in this case the court argued, I mean, the government argued that there actually were sufficient findings. But answering the standard issue. But a defendant's entitled to counsel at sentencing, right? Correct, Your Honor. So let's say if you're pro per the whole way, and then you say, hey, I want, you know, then the jury comes back, you get slammed, and you say, well, you know, I think I've seen the error of my ways at this point. It would be a good, you know, I think I'd like a lawyer for sentencing. If the court said no to that. I'm going to answer both questions. I think the pending question is, is one, what the review is, and the government would argue that as Walters made the specific finding, and I'll quote from Walters, is that, here the district court's constitutional error did not amount to a complete denial of counsel. Because it impacted only on the sentencing phase, it did not affect the conduct of the trial from beginning to end. Well, that's a truism, and we know that. But that was written before Gonzales, and in Gonzales he wasn't deprived of counsel. He had counsel, he just didn't have the one he wanted. And Justice Scalia's opinion is adamant that the error, the harm, occurs in the denial of the counsel of choice. It says it six ways to Sunday. That's correct, Your Honor. That's what leaves at least this judge wondering, are we being led by the government down the path to reversal by the Supreme Court because we didn't understand the plain language of Gonzales, and made an artificial distinction between trial and sentencing, or do you think that there's a very bona fide way to distinguish it, based on what the Supreme Court has said? Based on what the Supreme Court said, the Supreme Court did not make a distinction between either the trial phase or sentencing phase. And so the only way that the lower courts can inform themselves is what was at issue in that case. And looking at what was at issue in that case, it was denial of counsel at the trial stage and the ability to confer. And the reason why there may be a distinction is that, as the Walters Court pointed out, is that the issue of exclusion here did not affect the framework in which the trial proceeded. And when you look at the Supreme Court's decision in Gonzales, they talk about the fundamental error being the context of counsel being able to, at trial, to possibly help with the issuance of guilt or innocence. The government believes that if the court finds that there was error in exclusion, which we have not discussed whether or not there were sufficient findings, you know, that it should be remanded for resentencing. We believe that a sensible approach would be to clarify, if it has concerns about the findings that were made, to make a limited remand on the Pro Hac Licea issue so that the district court can make findings specifically as to the denial of that application. This court would retain jurisdiction so it could come quickly back up to determine whether that is sufficient. And if it's not, then there would be a resentencing at that point in time. Well, I'm just trying to think of it from the standpoint that, you know, obviously there are significant, you know, if you put yourself in a defendant's place, you know, after you're convicted, even if your lawyer did a fabulous job at trial, you know, human nature is such that that's not the result that the defendant obviously wanted. So, you know, arguably a defendant could say, okay, you know, I don't want this same lawyer at sentencing because I've already tried this lawyer on for size and I, you know, it didn't come out the way that I wanted. So I think, you know, right or wrong, I'm going to get someone else because I need to feel that, you know, and then the court's faced with is every time someone gets convicted at sentencing, then we're going to have motions too. And then a lawyer comes in and then the lawyer says, well, I'm not familiar with the trial. I need the whole transcript. I can't do this and da-da-da-da-da-da-da-da. But, you know, but to say that all lawyers are the same really isn't true and that whether you get 150 months or 100 months, you know, that's 50 months of the defendant's life, that can make a difference. The government doesn't purport to say that, of course, the defendant is entitled to his choice of counsel. But as the Supreme Court said in Gonzalez, there are circumstances in which, you know, that right to counsel can be abridged to some extent. Okay. So is that where you're going then? You're coming in and saying that if the district court was applying a systemic kind of rule, something that was within the bounds of controlling the use of counsel that Gonzalez suggests in the part I read to counsel for the defendant, that that might fit within the part of the regime that says the courts can control at an institutional level. And then the question is whether or not what Judge Trevisan was doing meets that kind of standard. That's that limited remand you were looking for. Yes, Your Honor, because the Gonzalez opinion, both on the account of not having addressed the sentencing aspect of it, does point out kind of this purview where there's considerations that a court must take into account just by the nature of litigation. That echoes the same language in Walters. Walters specifically said that there's a concern only when there's a mechanistic application of the rule. And, you know, whether or not there's sufficient findings here is something that this court must determine and the government feels that there was sufficient. But to that extent, Walters is still in comport with the Gonzalez decision, which leaves open the issue that under a sentencing analysis, when that exclusion occurs at the sentencing stage, that harmless error may be applicable. The government's position is that regardless of whatever standard is applied, that if this case goes back, that it should be limited to remand for the reasons that I stated before in terms of the timing of application. All right. Thank you very much. I appreciate the argument. I think I'll start with the counsel, the Sixth Amendment issue. So the first thing is, I'd like to draw the Court's attention to part of the Walters decision, which I think demonstrates why it's undermined by Gonzalez-Lopez. If you go to page 593 of the opinion, it's 309 Fed Third at 593. The panel wrote, the panel explained, well, first of all, structural, you know, they cite the Supreme Court decision in Arizona versus Fulminante, and that, you know, most errors are subject to harmless error review. Structural errors are so intrinsically harmful as to require automatic reversal. And then they quote from Netter. And Netter, of course, is a, it's an elements case. It's a, anyway, I believe it was a materiality case. I can't remember off the top of my head. But regardless, they rely on Netter, which talks about why we apply harmless error analysis to most errors. But Gonzalez-Lopez made it very clear, and that is the type of argument that the government was making in the Supreme Court. And the Court completely rejected that argument, explained at length why the error is structural. So the reasoning behind the Walters decision has been seriously undermined by Gonzalez-Lopez. If not, I would say it's been, it's been eliminated. The reasoning for the decision is now gone. Any distinction between sentencing and trial is an artificial one. It's a, ultimately, the right to counsel attaches at any critical stage of the proceeding. This was a critical stage of the proceeding. There's no question about that. I did want to briefly address the government's argument that Judge Tavresian made adequate findings or that there should be a limited remit. But just say, let's say we say that we say that Gonzalez-Lopez, that it's taken that Walters has been undermined, and we say that the standard is structural, so it goes back. But then is every defendant, after they get convicted, going to be able to come in and say, I want someone else? Or will a court be able to do anything under those circumstances? Well, first of all, Your Honor, the only defendants that Gonzalez-Lopez applies to are those that are able to retain their own attorneys. So by definition, as this Court well knows, most defendants are, unfortunately, indigent. So it's clear, and Justice Scalia makes quite clear, that the right to counsel choice only applies to defendants who can retain the attorney of their choosing. So, no, it won't happen. And as to retain counsel, yes, it might. And some defendants will choose to change attorneys, and some will not. It may, and it may ultimately, I hate to be crass, but, you know, it may turn on a question of whether the defendant has the resources. But that's really not the point. The point is that the Constitution accords a different, a particular right to defendants who are able to retain their attorney of their own choosing. That right is not accorded to defendants who are represented by appointed counsel. Now, we can quarrel about whether that's fair or whether it's just, but that is what the Constitution says, as interpreted by the Supreme Court. I did want to just, again, address briefly the whole issue of the local rule and the courts managing their, you know, the courts entitled to manage who appears before them. First of all, in terms of Justice Scalia's language at the end of the opinion that Judge Fisher pointed to, Justice Scalia cites first Morris v. Slappy and also Wheat. Wheat, of course, is a conflict of interest case. And I think that the citation there is intended to point out to courts that they can still, they're still entitled to disqualify. To balance. To balance, to disqualify. And you can't allow a defendant to be disruptive or. Exactly. And, you know, that there may be cases where you have to disqualify counsel of choice because there's a conflict of interest. And that is still good law. And that's what I would, that's how I would read that language. In terms of, I'm sorry, I just. Oh, yes. In terms of Judge Tabrisian's reasoning, I'd just like to read the court. I mean, I just have to. First of all, the judge denied the motion with a stamp and a handwritten order. And he wrote, He maintains a law office in the State of California and purports to practice law in the State of California. And I can't. Who's that on the counsel table? No, that's Mr. Stein. Mr. Ellis is not here. He purports to practice in the State of California  that Mr. Ellis is improperly practicing law within the State of California without a license issued by the State Bar of California. Well, this, aside from being somewhat. Annoying. Intemperate, I would say. But regardless, clearly, first of all, Mr. Ellis practices all over the country.  He complied with the rules. The judge gave no credence to the defendant's Sixth Amendment right, didn't apparently consider it. And I would say, even if harmless error analysis were to apply, this is the case. Judges are not entitled to intentionally commit error because they know it might be harmless later. This is not something that judges are allowed to do. And clearly, in the application, I mean, Mr. Ellis gave notice to the judge, hey, the Ninth Circuit's issued this Walter's decision, and I want to come in and represent the defendant. And so the judge essentially found a way to reach the ruling that he believed was appropriate. So even if it worked for Gonzales-Lopez, this is the type of case where reversal would be justified. With that, unless there's further questions, I'm prepared to submit. Thank you. Thank you both. We appreciate the argument. Interesting case.
judges: Gibson , Fisher, Callahan